FRANK T. KINNARE, Admr.

*v.*

THE CITY OF CHICAGO *et al.*

*Opinion filed February 14, 1898.*

1. SCHOOLS—*board of education is merely the agent of the State.* A board of education is a *quasi* corporation, created by general law to aid in the administration of the State government, and is charged with duties purely governmental in character.

2. MASTER AND SERVANT—*doctrine of respondeat superior does not apply to board of education erecting school building.* A board of education erecting a school building in pursuance of the duties imposed upon it by statute, (Hurd's Stat. 1897, chap. 122, pars. 173-184,) being merely the agent of the State, cannot be made to respond in damages, as master, for the negligent acts of workmen employed upon the building.

3. SAME—*city co-operating with board of education in erecting school building is not liable as master.* The doctrine of *respondeat superior* does not apply, as between a city and workmen employed upon a school building being erected by the city and the board of education, where the city's connection with the work arises solely from its disinterested discharge of a public duty imposed, *nolens volens,* by general law, as, in such case, those employed on the building are the servants of the State, and not of the city.

*Kinnare* v. *City of Chicago,* 70 Ill. App. 106, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

JAMES MAHER, (A. W. BROWNE, of counsel,) for appellant.

DONALD L. MORRILL, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The Superior Court of Cook county ruled that a declaration filed by the appellant administrator against the appellees, the city of Chicago and the board of education

of the city of Chicago, alleging that the intestate of said administrator, while engaged as a workman in the construction of the roof of a school building which was being erected in said city by the board of education and the city, came to his death by reason of the negligence of the defendant corporations in failing to provide proper safeguard, railing, scaffolding, etc., for the use of the said workman, was obnoxious to a demurrer. The correctness of such ruling is the sole question presented by this record. We may first devote our attention to the question whether the demurrer was properly sustained as to the board of education.

Section 1 of article 8 of the constitution of 1870 is as follows: "The General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." The General Assembly, in view of this declared policy of the constitution, deemed it expedient, in the distribution of the powers of the State government, to provide for the creation of boards of education, and to delegate to such boards the necessary power and charge them with the duty to carry the constitutional mandate into execution. Appropriate legislation to that end was enacted, which, so far as need be here considered, is embraced in paragraphs 173 to 184, both inclusive, of chapter 122, entitled "Schools." (Hurd's Stat. 1897.)

Paragraph 173, as far as it is necessary to be set out for the purposes of this case, is as follows: "In cities having a population exceeding one hundred thousand inhabitants, from and after this act shall take effect, the board of education shall consist of twenty-one members, to be appointed by the mayor, by and with the advice and consent of the common council, seven of whom shall be appointed for the term of one year, seven for the term of two years and seven for the term of three years." Paragraphs 174, 175 and 176 relate to the qualification of the members of the board, the organization thereof, and its duty to

keep a record of its proceedings. Paragraph 177 is as follows: "The said board of education shall have charge and control of the public schools in such cities, and shall have power, with the concurrence of the city council: First, to erect or purchase buildings suitable for school houses, and keep the same in repair; second, to buy or lease sites for school houses, with the necessary grounds; third, to issue bonds for the purpose of building, furnishing and repairing school houses, for purchasing sites for the same, and to provide for the payment of said bonds; to borrow money for school purposes upon the credit of the city." Paragraph 178 invests the board with various powers, among which is power to furnish the school with furniture and apparatus, to employ and dismiss teachers, prescribe the course of studies, to divide the city into school districts, to expel pupils, lease school property and loan money belonging to the school fund. Paragraph 179 commits to the board the entire superintendence of schools and control of school buildings and grounds, and imposes various duties to be discharged by the board in connection with the management of the schools. Paragraph 181 directs the title to all real estate held for the use of the schools shall be in the city in trust for school purposes, and that sales of such real estate, or any interest therein, shall be made by and at the request of the board of education. Paragraph 182 makes the city treasurer the custodian of the funds of the board. Paragraph 184 is as follows: "All schools in such cities shall be governed as hereinbefore stated, and no power given to the board of education shall be exercised by the city council of such city."

It therefore appears the appellee board is a corporation or *quasi* corporation created, *nolens volens*, by the general law of the State to aid in the administration of the State government, and charged, as such, with duties purely governmental in character. It owns no property, has no private corporate interests, and derives no

special benefits from its corporate acts. It is simply an agency of the State, having existence for the sole purpose of performing certain duties, deemed necessary to the maintenance of an "efficient system of free schools" within the particular locality in its jurisdiction. The State acts in its sovereign capacity, and does not submit its action to the judgment of courts and is not liable for the torts or negligence of its agents, and a corporation created by the State as a mere agency for the more efficient exercise of governmental functions is likewise exempted from the obligation to respond in damages, as master, for negligent acts of its servants to the same extent as is the State itself, unless such liability is expressly provided by the statute creating such agency. *Town of Waltham* v. *Kemper*, 55 Ill. 346; *Elmore* v. *Drainage Comrs.* 135 id. 269; *Symonds* v. *Clay County,* 71 id. 355; *Town of Odell* v. *Schroeder*, 58 id. 353; *Wilcox* v. *City of Chicago*, 107 id. 334; *Nagle* v. *Wakey*, 161 id. 387; 15 Am. & Eng. Ency. of Law, p. 1164; 2 Dillon on Mun. Corp. p. 1193.

It is perfectly clear the declaration disclosed no cause of action against the board of education. It remains to be seen whether the allegations of the declaration make a case against the city.

The only allegation in the declaration with reference to the connection of the city with the work of constructing the building is, that it and the board of education "were engaged in erecting and roofing" the school building. Section 21 of the act creating the board of education (Hurd's Stat. 1897, par. 177, p. 1454,) provides that the board of education created by that act, with the concurrence of the city council of the city of Chicago, shall have power to erect school houses, and in the absence of any allegation in the declaration to the contrary it is to be assumed the connection of the city with the construction of the building was only such as arose out of the authority and power vested in the city by the provisions of said section. The erection of the school building was

of no benefit to the city as a municipality, and whatever connection it had with the board of education in the matter of the construction of the building was simply for the purpose of discharging a public duty cast upon it by the law-making power of the State. That duty, as we have seen, is governmental in character and nature. It was performed in obedience to a statute which was enacted because it was deemed expedient by the legislature, in the distribution of the powers of government, to require the city, *nolens volens,* to perform a public service in which the city, as a corporation, had no interest. The intestate of appellant, and others engaged in the work of constructing the building, must be regarded as the servants and agents of the State, and not of the city, and for that reason the doctrine of *respondeat superior* is not applicable against the city. 2 Dillon on Mun. Corp. *supra.*

It is urged the principles declared and enforced by this court in *City of Chicago* v. *Seben,* 165 Ill. 371, are applicable to this case, and establish the liability of the city to respond to the appellant administrator. In that case the negligence charged was, that the city allowed a sewer inlet to remain open and uncovered in one of the streets of the city during the night time, and that appellant stepped or fell into such inlet and was injured. The city of Chicago voluntarily adopted the City and Village act. The terms of that act invested the city with power to lay out and establish streets and to construct and keep in repair culvert drains, sewers, etc., and to regulate the use thereof. By adopting the act the city voluntarily assumed the burden of exercising the powers thus conferred upon it. Mr. Dillon, in his work on Municipal Corporations, (sec. 998,) said: "The general doctrine of the American courts, as we shall presently see, *in respect of municipal corporations proper,* has been to hold them civilly liable for injuries from defective streets, although the ground for the distinction—which gives an action if the injury happens within the limits of a municipality having con-

trol of the streets therein, and denies it if it happens within the limits of a township or county having like control over the highways and adequate means of discharging its public duties in respect thereto—is not as satisfactory to the mind as could be desired." In *City of Chicago* v. *Seben, supra,* after holding this court recognized this distinction and citing decisions of this court in support of the holding, we said (p. 381): "The reason for the distinction, as given by this court in the cases above referred to, is, that cities and chartered towns and villages act under charters, by which valuable privileges are conferred upon them at their request, these privileges being held to be a consideration for the duties imposed upon them; and for the performance of these duties, like individuals, they must be responsible in an action. (*White* v. *County of Bond,* 58 Ill. 297.) Such organizations are the result of the action of the people, impelled thereto by considerations affecting, more or less, their private interest, while counties and towns do not become so at the special request of the people. Such counties and towns are 'involuntary *quasi* corporations, being political or civil divisions of the State created by general laws to aid in the general administration of the government.' (*Symonds* v. *Clay County,* 71 Ill. 355.) Cities are regarded as corporations created for their own benefit, while the inhabitants of a district invested by statute, *in invitum,* with particular powers, are made corporations without their consent.—*Town of Waltham* v. *Kemper,* 55 Ill. 346."

The charter of the appellee city did not invest it with power to construct school buildings or impose any such duty upon it. The General Assembly, by an enactment entirely distinct from the act under which the city became incorporated, selected the city as an agency of the State to aid in the general administration of the State government in the particular matter of providing a thorough and efficient system of free schools, in compliance with the requirement of the State constitution. The

171—22

question whether the doctrine of *respondeat superior* would apply to a city while engaged in the discharge of duties of the character of those thus thrust upon the city of Chicago by the General Assembly of the State, did not arise in the case of *City of Chicago* v. *Seben*, but, so far as any reference is made in that case to that question, the views expressed are in full accord with the principles announced in the decision of this case.

The judgment of the Appellate Court affirming the judgment of the Superior Court must be and is affirmed.

*Judgment affirmed.*