JESSE P. MINEAR, Appellee, *vs.* THE STATE BOARD OF
AGRICULTURE, Appellant.

*Opinion filed October 28, 1913.*

1. STATE BOARD OF AGRICULTURE—*State Board of Agriculture
is an arm or agency of the State.* The State Board of Agriculture
was created as an arm or agency of the State for the purpose of
managing and conducting a department of the State, and all pow-
ers conferred and duties enjoined upon the board are for the pur-
pose of enabling it to manage the department in such manner as
to best promote the objects of its creation.

2. SAME—*power to make rules does not render State Board of
Agriculture a private corporation.* The fact that the act creating
the State Board of Agriculture gives it power to make rules and
regulations for the efficient management of the department, which,
under the statute, includes the holding of State fairs, does not
take from the board its public character and subject it to the lia-
bility of a private corporation.

3. SAME—*State Board of Agriculture is not subject to liabili-
ties of a private or quasi public corporation.* The State Board of
Agriculture acquired no rights by the statute creating it which
the legislature cannot change or abolish at any time, and all of
the property acquired by it from all sources is trust property re-
quired to be used for the benefit of the department of agriculture,
and hence said board is neither a private nor *quasi* public corpo-
ration and is not subject to the liabilities of either.

4. SAME—*provision authorizing State Board of Agriculture to
sue and be sued construed.* The provision of the statute provid-
ing that the State Board of Agriculture may sue and be sued has
reference only to obligations incurred by contract in the manage-
ment of the department of agriculture, and does not refer to an
action of tort.

5. SAME—*State Board of Agriculture not liable in an action
of tort.* The State Board of Agriculture is not liable in an action
for damages for an injury received by the collapsing of the ele-
vated seats or bleachers provided for spectators of the races at
the State Fair, even though the board may have been guilty of
negligence in not discovering the defective condition of said seats
or bleachers.

APPEAL from the Circuit Court of Clark county; the
Hon. W. B. SCHOLFIELD, Judge, presiding.

SIDNEY S. BREESE, ROBERT A. HOLLAND, JR., and JOHN J. ARNEY, for appellant.

S. M. SCHOLFIELD, and FRED J. BARTLETT, for appellee.

Per CURIAM : Appellee, as plaintiff in the court below, recovered a judgment against the State Board of Agriculture for a personal injury alleged to have been sustained by the plaintiff by reason of the collapse of certain elevated seats, or bleachers, at the Illinois State Fair, on October 4, 1911. The declaration alleged that the plaintiff attended the State Fair on the day named; that the defendant, among other things, had advertised trials of speed to be given on the speedway or race-course on the fair grounds; that the defendant charged an admission fee to enter its said grounds, which the plaintiff paid, and for the purpose of giving a better view of the trials of speed, defendant had constructed the elevated seats, or bleachers, for use by visitors and patrons of the fair; that plaintiff entered upon said elevated seats or bleachers, and while standing upon the highest one of said seats, the support of which was rotten, decayed and defective, said seat by reason thereof broke and gave way, whereby the plaintiff was precipitated to and thrown with great force and violence upon the ground and greatly bruised, hurt and wounded. The declaration contains three counts. It alleges that defendant is a corporation created, organized and existing under and by virtue of an act of the General Assembly of the State of Illinois entitled "An act to revise the law in relation to the department of agriculture, agricultural societies, and agricultural fairs and provide for reports of the same," approved June 23, 1883, in force July 1, 1883. The declaration is based upon the theory that the defendant, the State Board of Agriculture, is liable for the negligence charged, to the same extent as any private corporation. Defendant demurred to the declaration but the demurrer was over-

ruled, and it thereupon pleaded the general issue and filed six special pleas, alleging, in substance, that defendant was not a corporation but was an arm or agency of the State for the management of the department of agriculture. The plaintiff moved to strike the special pleas from the files, which motion was allowed. Defendant excepted to the ruling and elected to stand by its special pleas. A jury was empaneled, the cause tried and a verdict rendered in favor of the plaintiff for $1500.

At the conclusion of the plaintiff's evidence, and also at the conclusion of all the evidence, defendant moved the court to instruct the jury to find it not guilty, but the motions were denied. After the verdict was returned defendant moved for a new trial and in arrest of judgment, but the motions were overruled and judgment rendered on the verdict. Defendant prosecuted this appeal directly to this court on the ground that the State is interested and that the construction of the constitution and the validity of a statute are involved.

It is contended that appellant is an arm or agency of the State and cannot be held liable for the negligence complained of; that it is not a corporation but is a board managing a department of the State, namely, the department of agriculture, and making it a defendant in this suit is the same as making the State a defendant, which is forbidden by section 26 of article 4 of the constitution. It is also contended that section 5 of the act creating the State Board of Agriculture, in so far as it authorizes said board to be sued, is invalid. It is further contended that on the merits the verdict and judgment are manifestly against the weight of the evidence.

The Illinois State Agricultural Society was created by an act of the legislature in 1853, (Laws of 1853, p. 230,) which act provided that the society should be known as a body politic and corporate. The object of the society was declared to be "to promote the agricultural, horticultural,

manufacturing, mechanic and household arts," and for that purpose the society was authorized to hold real estate to the amount of $25,000. The act authorized the society to contract and be contracted with and to sue and be sued in all courts of law or equity in this State, and to enjoy all the privileges incident to corporations of its character not inconsistent with the laws of this State. The society was given power to alter and amend its constitution and to make, alter and repeal such by-laws as might be deemed necessary for carrying out the objects of the society. In 1871 the General Assembly passed an act entitled "An act to create a department of agriculture in the State of Illinois," (Laws of 1871, p. 113,) the object of which was the promotion of agriculture, horticulture, manufacturing and domestic arts. Section 1 provided that the business of said department should be conducted by a board to be styled "The State Board of Agriculture," which should consist of a president, as many vice-presidents as there are or from time to time may be congressional districts in this State, and the last ex-president of the State Board of Agriculture. The said president and vice-presidents were to hold their offices for two years. The first board under the act was to consist of the president, vice-presidents and the last ex-president of the Illinois State Agricultural Society. The board was to have a secretary and treasurer, who should not be members of the board. The first secretary and treasurer were to be the secretary and treasurer of the Illinois State Agricultural Society. The second section of the act gave the State Board of Agriculture sole control of the affairs of the department of agriculture, of all State fairs, and power to make such by-laws, rules and regulations in the management of the business of the department of agriculture and State fairs, and in offering premiums, as the board might from time to time determine upon, but the State was in no event to be liable for any premium offered or debt contracted by said board. Section 3 authorized the State Board of Agricul-

ture to make provision for the organization of county agri-
cultural boards. Section 4 provided that money appropri-
ated from time to time for the department of agriculture
should be paid to the State Board of Agriculture, to be
expended in such manner as in the opinion of said board
would best advance the interests of agriculture, horticul-
ture, manufacturing and domestic arts in this State. Sec-
tion 5 required the board to keep an office at Springfield
for the transaction of its business, and provided that when
the new State house was so far completed as to allow it,
there should be assigned to the department of agriculture
suitable rooms therein, to be under the control of the said
board. Section 6 authorized the State Board of Agricul-
ture to contract and be contracted with, to purchase, hold
or sell property, and to sue and be sued in all courts or
places, but the State was not to be liable for any of its
debts or contracts. Section 7 provided the time at which
the first election for members of the board should be held
and the manner in which they should be elected. The board
was required to make annual reports to the Governor of
the transactions of the department of agriculture, giving a
complete, classified, financial statement of all money re-
ceived and of all expenditures and expenses, and the Gov-
ernor was required to cause 10,000 copies of said annual
report to be printed, one-half for the use of the department
of agriculture and the remainder for the use of the State
and General Assembly. In 1874 the act of 1871 (Laws of
1874, p. 130,) was revised, but no changes were made which
are necessary to be noticed in the decision of this case. The
act was again revised in 1883. (Laws of 1883, p. 1.) It
provided that the department of agriculture should be con-
tinued, and contained substantially all the provisions of the
previous acts of 1871 and 1874 with reference to the duties
and powers of the State Board of Agriculture. In addition
to giving the board sole control of the affairs of the depart-
ment of agriculture and State fairs, it was authorized to

hold fat stock shows at such times and places as it might determine upon. The power conferred by the previous acts upon the board to purchase, hold and sell property, to contract and be contracted with, and to sue and be sued, was retained in the act of 1883, as was also the requirement that the board make annual reports to the Governor.

Appellee contends that the Illinois Agricultural Society was a private corporation, and whether the act creating the department of agriculture was an amendment of the former society's charter or the creation of a new corporation, appellant is a private corporation, or, at most, a *quasi* public corporation, to which are delegated the control and management of the State department of agriculture. Prior to 1871 there was no department of the State known as the department of agriculture. The act of that year created a department of the State known as the department of agriculture, and the sole control of its management for the purpose of best promoting the objects of its establishment was conferred upon a board created for that purpose, to be known as the State Board of Agriculture. Appellee concedes in his brief that in so far as the acts of the State Board of Agriculture relate to the department of agriculture, its acts are of such public nature as to be classed as acts of the State, "and in performing the particular duties in connection with the management of the department of agriculture the State Board of Agriculture acts as the agency of the State." But it is argued that the board has powers and enjoys privileges not conferred for the purpose of enabling it to manage the department of agriculture as an agency of the State, the logical result of which would be that the board would not be liable in an action for damages for negligence in the management and conduct of the department of agriculture, but would be liable for its negligence when in the discharge of duties other than those necessarily incident to the management of the department of agriculture. We are unable to agree with appellee's con-

tention.  In the first place, we think it plain the State Board of Agriculture was created as an arm or agency of the State for the purpose of managing and conducting a department of the State, and all the powers conferred and duties enjoined upon the board were for the purpose of enabling it to manage the department in such manner as to best promote the objects of its creation.  It was, and is, well known that State fairs, at which farm products, agricultural implements and all kinds of stock are exhibited, are among the most effective means of promoting the objects of the department of agriculture.  Holding State fairs was recognized in the act as belonging to the management of the department of agriculture, and the State Board of Agriculture was given the management of them.  It is a matter of common knowledge that to make fairs successful, inducements must be offered to procure the exhibition of stock, agricultural products, etc., and giving the board power to manage and control the State fairs and to determine what inducements should be offered to exhibitors, either as premiums or otherwise, and what admission fee or other charges should be made, was not conferring powers unnecessary to the management of the department of agriculture. The only object for which the State Board of Agriculture was created was to manage the department of agriculture, and giving the board power to make rules and regulations for the efficient management of the department did not take from it its public character and subject it to the liabilities of a private corporation.  The board acquired no rights by the act creating it that the legislature could not at any time change, alter or abolish.  The property acquired by it, the money appropriated to it by the State, and the receipts for admissions to the fair and from any other source, were trust property and funds, required to be used and expended for the benefit of the department of agriculture, and none of it, even if there should at any time be a surplus above the expenses, belongs to or could be appropriated by the

members of the board. It is required to annually report to the Governor and account for all its receipts and expenditures. One of its sources of income is appropriations made to it by the legislature every two years since the department of agriculture was established, and its management devolved upon the board created for that purpose. These and all other funds received by the board it is authorized to expend only for the advancement of agriculture, horticulture, manufactures and domestic arts in this State. The employment of two persons not members of the board,—one for secretary and one for treasurer,—and the payment to them of a salary, is authorized, but the board has no stockholders, pays no dividends and was not created or organized for the profit of its members. It is essentially a public board created to manage a department of the State, and is not subject to the liabilities of a private or *quasi* public corporation.

The liability of the Iowa State Agricultural Society for a tort was before the Supreme Court of Iowa in *Hern* v. *Iowa State Agricultural Society,* 91 Iowa, 97. The court said: "The only question for us to determine is as to the liability of the society for the acts complained of, and at the outset it is important to have in mind that the society is in no sense a corporation for pecuniary profit. It is an agency of the State. It exists for the sole purpose of promoting the public interest in the business of agriculture. Its public character more fully appears when we consider that its organization is provided for by statute; that it has no stockholders; that by law the president of each county agricultural society in the State, or other delegate therefrom, duly authorized, is made a member of the board of directors; that said board is required to make annual reports to the Governor, which are to be distributed throughout the State; that the powers of the board are prescribed by statute. * * * Not being a corporation for pecuniary profit, the defendant society's liability is not controlled by the rules

of law applicable thereto. The society is an arm or agency of the State, organized for the promotion of the public good and for the advancement of the agricultural interests of the State. It would be manifestly wrong to permit its funds to be used to pay damages arising out of the commission of wrongful acts by its officers and servants and which are in nowise connected with the object and purpose of the society's creation."

In *Berman* v. *Minnesota State Agricultural Society,* 93 Minn. 125, the plaintiff sued the society for a tort. The court held the defendant was a State department, and said: "The necessary result of this conclusion places the society directly under the exclusive authority of the State, which may change its officers or its organization and provide for different regulations for the government of the fair, as the best interests of the public may, in the judgment and wisdom of the legislature, hereafter determine. Hence for such injuries as plaintiff claims to have sustained an appeal to the legislature furnishes the only redress, and we must assume that it will be granted if deserved." That decision was approved in the later case of *Berman* v. *Minnesota Agricultural Society,* 95 Minn. 353.

In *Melvin* v. *State of California,* 121 Cal. 16, one of the questions involved was whether the State Agricultural Society was exercising a governmental function in conducting a fair. Upon this question the court said: "The State Agricultural Society, under the act of 1880, became, ever since has been and now is a State institution. * * * It exists for the sole purpose of promoting the public interest in the business of agriculture and kindred objects. It is an agency of the government and in no sense an organization for pecuniary profit to the State."

Our attention is called to *Downing* v. *Indiana State Board of Agriculture,* 129 Ind. 443; 28 N. E. Rep. 123. It appears from the opinion in that case that in 1851 the legislature of the State of Indiana passed an act by which

the Indiana State Board of Agriculture was incorporated. The substance of the provisions of the act is set out by the court, and it is held that the Indiana State Board of Agriculture, created under that act, is a private corporation. We do not regard that case as authority in favor of the proposition that the Illinois State Board of Agriculture is a private corporation. The act under which the Indiana board was organized was materially different from the Illinois act and afforded good reason for holding that the organization created by it was a private corporation.

We are also referred by appellee to *Lane* v. *Minnesota State Agricultural Society,* 62 Minn. 175, (29 L. R. A. 708,) where it was held that under the statute then existing the State Agricultural Society was a private corporation and liable to a party injured by its negligence. The act then in force under which the State Agricultural Society existed was subsequently replaced by another act, under which it was held the society was an arm or agency of the State. *Berman* v. *Minnesota State Agricultural Society, supra.*

Whether agricultural societies are private corporations or agencies of the State for the conduct and management of a department of the government depends upon the legislative act creating them. It is not claimed by appellee that the legislature had not the power to constitute the State Board of Agriculture an arm or agent of the State for the management of the department of agriculture. Indeed, as we have seen, it is conceded that the State Board of Agriculture is the agent of the State in the management of the department of agriculture and in its management of that department is in the discharge of a governmental function. But it is contended that the act creates the board a private or *quasi* public corporation and delegates to it governmental functions in the management of the department of agriculture. As before stated, this view does not appear to us to be warranted by the act creating the department of agriculture and the board and delegating to the board the sole

management of the department. If, as we hold, the State
Board of Agriculture is an agency of the State in the exercise of governmental functions, it is not liable, under the
common law, for injuries claimed to have been sustained
as a result of its negligence. This is not disputed by appellee, and is so thoroughly settled by all the authorities
that we deem it necessary to cite only *Hollenbeck* v. *County
of Winnebago,* 95 Ill. 148, and *Maia* v. *Eastern State Hospital,* 97 Va. 507; 47 L. R. A. 577. The opinions in these
two cases contain a list of many authorities upon the subject.

It is contended, however, by appellee that the statute
expressly makes the State Board of Agriculture liable in
actions of this character by conferring upon it the right to
sue and be sued. In *Hollenbeck* v. *County of Winnebago,
supra,* the same point was made, and it was insisted that
the statute giving a county the power to sue and be sued,
to purchase and hold personal and real property, and to
make contracts, made it liable in an action of tort for negligence, but the court held otherwise. In *Moody* v. *State
Prison of North Carolina,* 128 N. C. 12, (53 L. R. A. 855,)
which was an action for damages for negligence, the court
said the statute incorporating the defendant did not confer
upon it authority to sue and be sued but that such authority
given by the statute had reference to private and *quasi* public corporations. The court held that statute did not apply
to governmental agencies, and said: "But even if such
authority was given, it would cover only actions ordinarily
incidental in its operation and would not extend to causes
of action like the present. There is a distinct difference
between conferring suability as to debts and other liabilities for which the State's prison is now liable and extending liability for causes not heretofore recognized. * * *
This is substantially a suit against the State. The defendant is a mere agent of the State in the administration of
its government." The Supreme Court of Tennessee held
in *Alston* v. *Walden Academy,* 13 L. R. A. (N. S.) 1179,

that the fact that the charter of a charitable corporation maintained for educational purposes provides that it may sue and be sued does not render it liable for the torts of its officers and agents. In *Leavell* v. *West Kentucky Asylum for the Insane,* 4 L. R. A. (N. S.) 269, which was an action for a tort, it was contended that because the statute creating the defendant authorized it to sue and be sued, it was placed upon the same footing as all other corporations with respect to torts. The court said: "We do not think this contention is sound. There are, it is true, many causes of action for which appellee may sue and also grounds upon which it may properly be sued. It may, through its officers, make contracts for supplies for its inmates, incur liabilities on that account, and for the proper maintenance of the institution it may sue for debts due it or to enforce any right allowed by law. * * * We are of the opinion, therefore, that the right given appellee by statute to sue, and to others to sue it, is to be taken in a qualified sense, and should not be so construed or extended as to make it responsible to persons injured, as was appellant, by reason of the misconduct or negligence of its inmates or employees." The provision that the State Board of Agriculture might sue and be sued was not intended to impose any new liability, but had reference only to obligations incurred by contract in the management of the department of agriculture.

It follows from the conclusion we have reached that the court erred in submitting the case to the jury and rendering judgment on the verdict.

The judgment is reversed.                    *Judgment reversed.*