314

(No. 1970— ▮▮▮▮▮)

ELMER NAFZIGER, RECEIVER OF CHICAGO, SPRINGFIELD & ST. LOUIS RAILWAY COMPANY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1934.*
*Rehearing denied January 9, 1935.*

STEVENS & HERNDON, for Claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant seeks to recover the sum of $1,995.18 which he claims to have expended in and about the repairing and rebuilding of certain railway cars, the repairing of a certain sidetrack, and the derailing of certain cars, all of which he claims was made necessary by and as the result of the carelessness and negligence of the servants and agents of the respondent.

The evidence offered on behalf of the claimant shows that prior to and on the 13th day of August, A. D. 1931 the claimant was in possession of and operating a certain railway between Springfield and Lock Haven in this State, and particularly between the city of Waverly in Morgan County and the city of Modesto; that in the Spring of 1931, a sidetrack was constructed about one-half mile south of said city of Waverly to accommodate the O'Connor Construction Co., which company was then engaged in constructing hard roads for the State; that such company completed its work in July, 1931; that thereafter said sidetrack was assigned to the State Highway Department and was used by such department in connection with the unloading of material used in the construction of S. B. I. Route 111 south of Waverly; that said sidetrack was approximately 1,200 feet in length, and was constructed with a descending grade from the north to the south; that it was on the east side of the main line, and connected with such main line at the north end thereof, the south

end being a stub end; that the Highway Department had a cement house and two pits or bins alongside of such sidetrack, for unloading purposes; that for several days prior to August 13, 1931 the State Highway Department was engaged in the construction of S. B. I. Route No. 111 between Modesto and Waverly; that on the 12th day of August, A. D. 1931, about five-thirty o'clock P. M., the employees of the claimant placed fourteen cars loaded with road material for said State Highway Department on said sidetrack; that all of such cars were coupled together when left on said sidetrack; that blocks were placed under the wheels of several of such cars; that hand brakes were set on each of the three cars at the south end of said string of fourteen cars, and the air brakes set on all of said cars; that some time during the night of August 12th or the morning of August 13th, said cars started in motion and ran down said sidetrack to the south end thereof, thereby derailing and damaging three of said cars.

The evidence is not clear on the question as to whether or not the employees of the respondent moved one or more of said cars on the night of August 12th, after they had first been spotted, nor does the evidence satisfactorily disclose what caused the cars to start in motion.

The respondent contends that the air gradually escaped from the air brakes, thereby rendering them ineffective; that on account of the steep grade of the sidetrack, the hand brakes and blocks were insufficient to hold the cars after the air brakes became ineffective; and the cars were started in motion by reason of such facts.

It also appears from the evidence that on the morning of August 13th the claimant pulled eleven of said cars back to the north end of the track, leaving the three cars which previously had been derailed, at the south end of the track; that three of such eleven cars contained cement and the three cars of cement were spotted near the north end of the sidetrack; that the other cars contained sand and gravel and were spotted at the pits about three or four car-lengths south of the cement cars; that hand brakes were set on said eleven cars after they had been returned to the north end of the track and blocks placed under the wheels of some of the cars; that thereafter some of the employees of the respondent at-

tempted to move said cement cars to the south for convenience in unloading, and in so doing released the brakes on said cars and kicked the blocks from under the wheels, whereby said cars were started in motion; that after said cars were started, it became impossible to stop them and they again ran down the track and collided with the aforementioned sand and gravel cars, and the entire string of cars ran to the end of the sidetrack, where they collided with the three cars which had been derailed the previous evening, thereby causing considerable additional damage.

It is stipulated that the cost of labor and materials for making the repairs made necessary by the two accidents in question was $1,995.18.

The Attorney General contends: first, that the damages resulting to the claimant were not the result of any carelessness or negligence on the part of the servants or agents of the respondent; second, that the doctrine of respondeat superior does not apply to the State under the facts in this case, and that there is no liability on the part of the State even though the damages in question were the result of the carelessness and negligence of its servants and agents.

In the view we take of the case, it is unnecessary to consider the question as to whether the damages in question resulted from carelessness or negligence on the part of the servants or agents of the State.

This court has held in numerous cases that in the construction and maintenance of its S. B. I. roads, the State acts in a governmental capacity, and therefore is not liable for the negligence of its servants and agents in connection therewith, in the absence of a Statute making it so liable. *Chumbler* vs. *State,* 6 C. C. R. 138; *Braun* vs. *State,* 6 C. C. R. 104; *Bucholz* vs. *State,* 7 C. C. R. 241. This has been the recognized rule of law in this State for many years. *Kinnare* vs. *City of Chicago,* 171 Ill. 332; *Minear* vs. *State Board of Agriculture,* 259 Ill. 549; *Gebhardt* vs. *Village of LaGrange Park,* 354 Ill. 234.

Claimant contends that the respondent in doing the work in question acted in the same capacity as a private contractor and not in a governmental capacity, and was therefore liable for the acts of its servants and agents in connection there-

with. However, claimant cites no authority in support of its contention, and we have been unable to find any authority therefor in this State. Our courts have held that, among others, the following activities of municipal or quasi-municipal corporations involve governmental functions, to-wit:

The construction of a school house, (*Kinnare* vs. *City of Chicago*, 171 Ill. 332); maintaining a hospital, either as a charity or in the exercise of police power, (*Tollefson* vs. *City of Ottawa*, 228 Ill. 134); the management and operation of the State Fair, (*Minear* vs. *State Board of Agriculture*, 259 Ill. 549); maintaining and operating a park, (*Stein* vs. *West Chicago Park Commissioners*, 247 Ill. App. 479); the maintenance and operation of a swimming pool, including the conveyance of children to and from the same, (*Hendricks* vs. *Urbana Park District*, 265 Ill. App. 102; *Gebhardt* vs. *Village of LaGrange Park*, 354 Ill. 234).

Such conclusions were reached notwithstanding the fact that in the case involving the maintenance of a swimming pool, (*Stein* vs. *West Chicago Park Commissioners*) a fee was charged for its use; and in the case involving the maintenance of the State Fair Grounds (*Minear* vs. *State Board of Agriculture*), an admission fee was charged.

In all or practically all of the cases above cited the question involved was whether the defendant was acting in a governmental capacity or a proprietary capacity, and the question as to what is necessary to constitute a governmental function, and the distinction between governmental functions and proprietary functions were considered and discussed. Upon consideration of the cases above cited, and other cases bearing on the question, we have no hesitancy in holding that in the construction of its hard-surfaced roads the respondent is engaged in a governmental function.

In the absence of a Statute making the State liable for the negligence of its servants and agents in connection with governmental functions, this court has no authority to allow an award against the respondent for such negligence.

IT IS THEREFORE ORDERED that award be denied and the case dismissed.

## OPINION ON PETITION FOR REHEARING.

*Per Curiam:*

On petition for rehearing the claimant contends that in the construction of its hard-surfaced roads the State is not engaged in a governmental function, and as authority for its contention cites the case of *Hanrahan* vs. *City of Chicago,* 289 Ill. 400; *City of Chicago* vs. *Seben,* 165 Ill. 371; and McQuillin on Municipal Corporations, 2d Edition, Volume 6, pages 798-801; also *Byrne* vs. *Chicago General Railway Co.,* 169 Ill. 75; and *City of Chicago* vs. *Tribune Company,* 307 Ill. 595.

Neither of the two cases last cited involve the question which is involved in this case, and neither of such cases is authority for the proposition contended for by claimant.

The case of *Hanrahan* vs. *City of Chicago* and the case of *City of Chicago* vs. *Seben* involve the question of the liability of a city for personal injuries sustained by reason of the negligence of such city in the maintenance of its public streets. There is no question but what a city is liable for the negligence of its servants and agents in the maintenance of its public streets, but the law making it so liable is regarded as an exception to the general rule, and is based upon the theory that cities are organized at the instance and request of their own citizens and for considerations which affect, more or less, their private interests; they are regarded as corporations created for their own benefit, and therefore as to the maintenance of the streets within their corporate limits, they are considered as acting in a municipal or ministerial and not in a governmental capacity. *Kinnare.* vs. *City of Chicago,* 171 Ill. 332; *Johnson* vs. *City of Chicago,* 258 Ill. 494; *Roumbos* vs. *City of Chicago,* 332 Ill. 70.

The case of *City of Chicago* vs. *Seben,* cited by claimant, was analyzed and considered by the Supreme Court in the case of *Kinnare* vs. *City of Chicago,* 171 Ill. 332, in which last mentioned case the court distinguished between the duties thrust upon a city by the General Assembly through the General Corporation Act, as in the Seben case, and the duties performed by the City as an agency of the State in the general administration of State government, as in the Kinnare case, in which case it was held that the City was not

liable for the negligence of its servants and agents in the construction of a schoolhouse.

In the Kinnare case, the Supreme Court quotes with approval from Dillon on Municipal Corporations as follows:

"The general doctrine of the American courts, as we shall presently see, *in respect of municipal corporations proper*, has been to hold them civilly liable for injuries from defective streets, although the ground for the distinction—which gives a cause of action if the injury happens within the limits of the municipality having control of the streets therein and denies it if it happens within the limits of a township or county having like control over highways and adequate means of discharging its public duties in respect thereto—is not as satisfactory to the mind as could be desired."

In the case of *Roumbos* vs. *City of Chicago,* 332 Ill. 70, the court, on page 77, said:

"Cities become incorporated by the voluntary act of their inhabitants, for the benefit of the territory incorporated and the people residing within the corporation. By their incorporation they receive certain powers and privileges and assume certain duties and obligations. So far as they are exercising these privileges and duties in the interest of the general public (the people of the State at large) they represent the sovereignty of the State and are not liable for the negligence of their officers and agents in the performance of such duties, but so far as their acts concern merely the interest of the particular locality and its inhabitants they are responsible, the same as private corporations."

It is well settled in this State that the law which makes a city liable for the negligence of its servants and agents in the construction or maintenance of its streets, does not apply to townships, or counties, nor by analogy to the State.

Some of the cases which hold that the construction and maintenance of roads and bridges are governmental functions for which there is no liability on the part of a county or township in the absence of a Statute making it liable, are the following: *Hedges* vs. *County of Madison,* 1 Gilman 566; *Town of Waltham* vs. *Kemper,* 55 Ill. 346; *Bussell* vs. *Town of Steuben,* 57 Ill. 35; *White* vs. *County of Bond,* 58 Ill. 297; *Cooney* vs. *Town of Hartland,* 95 Ill. 516; *Nagle* vs. *Wakey,* 161 Ill. 387.

Under the well established law of this State, there can be no question but what the *State* in the construction and maintenance of its hard-surfaced roads is acting in a governmental capacity.

The petition for rehearing is therefore denied.