(No. 3173— )

HERMAN BISHOP AND KENNETH BISHOP, BY HERMAN BISHOP, HIS NEXT FRIEND, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 16, 1938.*
*Rehearing denied June 13, 1939.*

F. O. PARRISH and E. P. FIELD, for claimants.

OTTO KERNER, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On December 30th, 1937 the claimants filed their complaint herein, and allege therein substantially as follows:

That on September 11th, 1936 three highway maintenance men in the employ of the Division of Highways, Department of Public Works and Buildings of the respondent, were engaged in constructing an expansion joint on S. B. I. Route 97 at a point three and one-half miles west of the Village of Roseville, in Warren County, known as Parrish's Corner. S. B. I. Route 97 is a concrete highway, and at that point extends in a northerly and southerly direction and is there intersected by a gravel road which extends in a northerly and southerly direction. Just before noon on the last mentioned date, a trench about six inches wide and nine or ten inches deep had been cut across the concrete slab and had been half-filled with hot liquid asphalt heated to 450 degrees or more. At noon the workmen stopped work, and proceeded to a point under a tree on the east side of the gravel road, about fifty (50) feet north and twelve (12) feet east of said trench or expansion joint, leaving the same without any guard or barricade, and without posting any notice of danger.

Also, that the claimant, Herman Bishop, is the father of the claimant, Kenneth Bishop; that the claimant, Kenneth Bishop, was then a minor of the age of seven (7) years, and resided with his parents some distance south of such concrete highway, on the east side of the aforementioned gravel road; that on the day in question, such minor was attending a school located a short distance north of said concrete highway, and on the west side of said gravel road; that it was customary for said minor at noon time to walk from said school to said

Parrish's Corner, where his father met him and took him home in an automobile.

Also, that at noon time on the date in question, said Kenneth Bishop, with four other children, traveled in a southerly direction along the east side of said gravel road, and passed the highway patrolman of the respondent who gave them no notice or warning of the hot asphalt in the trench or the danger connected therewith; that in crossing said concrete highway the claimant, Kenneth Bishop, stepped on and into the hot liquid asphalt in said expansion joint with his right foot, and thereby suffered severe burns, resulting in serious and permanent injuries.

Also, that the claimant Herman Bishop was then and there in the exercise of all due care and caution for the safety of said child, and had no notice or knowledge of the existence of said expansion joint; that the claimant, Kenneth Bishop, was not and could not be held guilty of contributory negligence; and that the aforementioned highway maintenance men were guilty of wilful, wanton and grossly negligent conduct which resulted in the injuries to the minor claimant.

The Attorney General has entered a motion to dismiss on the ground that the State is not liable for the negligence, or for the wilful and wanton misconduct of its employees engaged in the maintenance and repair of its highways.

This court has repeatedly held that in the repair and maintenance of its hard-surfaced highways, the State acts in a governmental capacity. *Wolfe* vs. *State*, No. 3215, decided May Term, 1938; *Spurrell* vs. *State*, No. 2228, decided September Term, 1937; *Tivnan* vs. *State*, 9 C. C. R. 495; *McGready* vs. *State*, 9 C. C. R. 63; *Baumgart* vs. *State*, 8 C. C. R. 220; *Bucholz* vs. *State*, 7 C. C. R. 241; *Braun* vs. *State*, 6 C. C. R. 104.

It is a rule of general application in this State that in the exercise of its governmental functions, the State is not liable for the negligence of its servants and agents in the absence of a statute making it so liable. *City of Chicago* vs. *Williams*, 182 Ill. 135; *Minear* vs. *State Board of Agriculture*, 259 Ill. 549; *Gebhardt* vs. *Village of LaGrange Park*, 354 Ill. 234.

Claimants recognize this general rule, but contend that they are entitled to an award on the grounds of equity and good conscience.

In the case of *Crabtree* vs. *State,* 7 C. C. R. 207, the question of the right of a claimant to recover on the grounds of equity and good conscience was fully considered, and we there held, page 222, that:

Section four (4) of paragraph six (6) of the Court of Claims Act, which provides as follows, to-wit: The Court of Claims shall have power: "to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contracto and ex delicto, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay"; merely defines the jurisdiction of the court, and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable; that this court has no authority to allow any claim unless there is a legal or equitable obligation on the part of the State to pay the same, however much the claim might appeal to the sympathies of the court; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award."

The decision in the Crabtree case has been adhered to and followed in numerous cases decided since that time.

Claimants are familiar with the rule as set forth in the Crabtree case, but say that since the decision in that case "the trend of social justice (equity and good conscience) has become far more pronounced each year," and that all questions involving social justice are now far more liberally considered than five years ago, and that each year there has been increased liberality shown and more advancement in all phases of this important question.

The question here involved, however, is not a question of social justice, but a question of legal right; a question as to whether the claimants would have a legal right to recover against the State if the State were suable. As above stated, the State in the exercise of its governmental functions, is not liable under the doctrine of respondeat superior, and therefore claimants could have no legal right of action against the State if it were suable, and, as stated in the Crabtree case, "unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the provisions of equity and good conscience to secure such an award."

In support of their assertion that all questions involving social justice are now more liberally considered than they were a few years ago, claimants state: "The Legislature of

this State recently passed acts appropriating many thousands of dollars as a gratuity, to the widows of various judges who died before the expiration of their terms, each of whom received a handsome salary for his services," and suggest that such action was prompted solely by a sense of duty, and to do social justice to such widows.

Whatever may have been the motive which prompted the legislative action referred to, such action can have no effect on our decision in this case. We can only apply the law as enacted by the Legislature, and have no right to attempt to legislate by judicial decision. Should the Legislature enact legislation which will authorize us to allow an award in this case, we will be only too happy to make such award.

The claimants also maintain that a distinction should be made between cases involving negligence and cases involving wilful and wanton misconduct, and that in cases where damages result from the wilful and wanton misconduct of a servant or agent of the State, an award should be allowed. There are several cases in the Reports, in which an exception to the general rule was recognized in cases involving wilful and wanton misconduct, and in the case of *Cavender* vs. *State,* 7 C. C. R. 199, and *Miller* vs. *State,* 7 C. C. R. 129, in which the facts were similar to the case at bar, awards were allowed on the basis of such exception.

However, since the decisions in such cases, the question as to whether an exception to the general rule should be recognized in cases involving gross negligence or wilful and wanton misconduct, was squarely before the court in the following cases, to wit: *Garbutt* vs. *State,* No. 2246, decided September Term, 1937; *Durkiewicz* vs. *State,* No. 2484, decided September Term, 1937; *Stanley, Admx.* vs. *State,* No. 2697, decided November Term, 1937; and *Sale, Admx.* vs. *State,* No. 3258, decided September Term, 1938.

Upon a careful consideration of the question in the cases cited, we concluded that there was no basis for a distinction between cases involving ordinary negligence, and cases involving gross negligence or wilful and wanton misconduct, and in each of such cases we held that there was no liability on the part of the State; that liability, if any, was on the part of the negligent employee, and not upon the State. In the Garbutt case, supra, we said:

"If the State is not liable for the ordinary negligence of its servants and agents, there is no principle of law under which it can be held liable for the gross or wanton negligence of such servants and agents, in the absence of a statute making it so liable. The purported exception has no basis in law, and is no longer recognized by this court."

This may seem a harsh rule in a case like this, which involves a permanent injury to a child of tender years, but we do not make the law and can only apply it as we find it, and if any change is to be made therein, it must come through the Legislature and not through the courts.

Under the law as above set forth we have no authority to allow an award, and the motion of the Attorney General must therefore be sustained.

Motion to dismiss allowed. Case dismissed.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

This case again comes before the court on claimants' petition for rehearing.

The attention of the court is particularly directed to the case of *The People Ex Rel. McDavid* vs. *Barrett, Auditor, etc.,* 370 Ill. 478, also to a recent Act of the Legislature of this State entitled "An Act Concerning Damages Caused by Escaped Inmates of Charitable Institutions Over Which the State Has Control," Session Laws 1935, page 255.

The McDavid case and two other cases consolidated therewith, involved the constitutionality of appropriations made by the Legislature for the benefit of the widows of certain Circuit Judges. The question involved was whether the appropriations were made for a public purpose, or whether the same were made for a private purpose, in violation of Section 20 of Article 4 of the Constitution. After fully considering the matter, the Supreme Court said:

"Our conclusion is that the appropriations in controversy are of a public nature, enhancing the general welfare and are therefore valid."

There is nothing in that case which in any way affects the issues here involved. The only question involved in that case was the authority of the Legislature to make certain appropriations. The court held that the Legislature had such authority, and sustained the provisions of the Act. The jurisdiction of the Court of Claims or its right to enter an award

was not involved or considered. That the Legislature has the authority to make an appropriation to the claimant in this case, if it sees fit to do so, there can be no doubt. However, this court has only such jurisdiction as the Legislature has conferred upon it, and under existing statutes, as construed by this court, we have no authority to allow an award under the facts in this case.

The provisions of the aforementioned Act of the General Assembly relative to damages caused by escaped inmates of certain charitable institutions, are as follows:

"Whenever a claim is filed with the Department of Public Welfare for payment of damages to property, or for damages resulting from property being stolen, heretofore or hereafter caused by an inmate who has escaped from a charitable institution over which the State of Illinois has control while he was at liberty after his escape, the Department of Public Welfare shall conduct an investigation to determine the cause, nature and extent of the damages inflicted and if it be found after investigation that the damage was caused by one who had been an inmate of such institution and had escaped, the said department may recommend to the Court of Claims that an award be made to the injured party, and the Court of Claims shall have power to hear and determine such claims."

Such Act merely provides, under certain circumstances, for an investigation by the Department of Public Welfare. If it is found, as the result of such investigation, that damage has been caused by an escaped inmate of a State charitable institution, the Department may recommend to the Court of Claims that an award be made to the injured party, and the Court of Claims is given specific power to hear and determine such claims.

Such Act has no direct bearing on the question here involved. Inferentially, however, it is an argument against the claimant, as it must have been considered that in the absence of such legislation, the Court of Claims had no jurisdiction to act on such claims;—otherwise it would not have been necessary to provide therein that "the Court of Claims shall have power to hear and determine such claims."

The other matters set forth in the petition for rehearing were fully considered by the court on the original hearing. There is nothing in the petition for rehearing which causes us to change our views as expressed in the original opinion, and the petition for rehearing is therefore denied.