(No. 3889— )

FRANCIS HALLISEY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 17, 1945.*

T. V. HOULIHAN, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

FISHER, J.

Francis Hallisey, in his complaint filed herein on November 15, 1944, alleges, in substance, as follows:

That on or about the first week in October, 1944, the Department of Highway Maintenance, State of Illinois, with headquarters at Elgin, Illinois, sprayed poison along the highway for the purpose of killing weeds along the highway;

That a portion of the road-side so sprayed lies along and adjoining land of claimant in Hebron Township, McHenry County, Illinois;

That this poison was so sprayed as to fall upon adjoining land and upon the grass and crops belonging to claimant;

That thereafter five dairy cows belonging to claimant, as a result of eating the grass so poisoned, became sick, and three died and two became permanently disabled and of no further value;

157

That claimant was thereby damaged in the sum of $963.00, for which sum he seeks an award.

That Attorney General filed a motion to dismiss the complaint for the reason that "the damages alleged to have been sustained by the claimant are based upon the acts of the employees of the respondent while engaged in a governmental function, and no liability rests upon the State for damages caused by such acts."

The record of the case consists of the Complaint, Motion to Dismiss, Statement, Brief and Argument on behalf of Respondent in support of the said Motion, and Reply Brief and Argument on behalf of Complaint.

The State of Illinois, as a part of the public highway system, constructs and maintains hard surfaced roads and various other highway improvements. In such construction and maintenance the State is engaged in a governmental function.

*Allison* vs. *State*, 11 C. C. R. 420.
*Reaber, etc.* vs. *State*, 12 C. C. R. 99.
*Turner, etc.* vs. *State*, 12 C. C. R. 265.

In the spraying of poison along the highway for the purpose of killing weeds, as alleged by the claimant, the agents or employees of the State were performing acts in connection with maintaining the said highway and were engaged in a governmental function. In the performance of such governmental function the State is not liable for the acts of its officers, agents or employees.

*Morrissey* vs. *State*, 2 C. C. R. 254.
*Reaber, etc.* vs. *State*, 12 C. C. R. 99.
*Turner, etc.* vs. *State*, 12 C. C. R. 265.
*Hewlett* vs. *State*, 13 C. C. R. 27.
*Minear* vs. *State Board of Agriculture*, 259 Ill. 549.

A claim quite similar was considered by this Court in the case of *Herbert E. Cleveland* vs. *State*, 8 C. C. R

346, in which case it was claimed that chemicals sprayed along the highway for the purpose of eradication of Canada Thistles fell within the field of the claimant adjoining the highway, and a number of cattle died as a result of eating grass that had been sprayed with the said chemicals. The Court held that there was no doubt that the claimant had suffered a substantial loss "but in the absence of some law creating a legal liability against the State, this Court believes itself without jurisdiction to make an award."

In the case of *Kinnars* vs. *City of Chicago,* 171 Ill. 332, the Supreme Court of this State said "When the State acts in its sovereign capacity it does not submit its actions to the judgment of the courts, and is not liable for the torts or negligence of its agents."

Counsel for claimant contends that the damages to the claimant were caused by the acts of the agents of the State in the performance of their duties and that the claimant should be compensated for his loss, and says that unless the State is responsible claimant has suffered a severe loss at the hands of the employees of the State, and yet is deprived of any right of compensation. Counsel further argues, with considerable force, that if the position of the Attorney General is correct, it leaves the claimant at the mercy of the State to use new, unusual and novel ways for the eradication of weeds on the highway without giving the adjoining property owners any protection for loss that may result therefrom. Claimant contends that this Court has full power to make an award in this claim under paragraph 4, Section 6 of the Court of Claims Act. Section 6 of the Court of Claims Act defines the powers and duties of the Court and is, in part, as follows:

6. The Court of Claims shall have power:

 *Par. 1* To make rules and orders not inconsistent with law, for carrying out the duties *imposed upon it by law.*

 *Par. 4* To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a sovereign commonwealth, should, in equity and good conscience discharge and pay.

Claimant asserts that under the cases above cited the words of said paragraph 4 are given no meaning whatsoever. In construing this paragraph (4) it must be remembered that it is the well settled law of this State that the rule or doctrine of respondeat superior is not applicable to the State, and it nowhere appears that it was the intention of the Legislature to go so far as to change this law and to make the State liable for the acts of its agents and employees.

The full meaning of paragraph 4 of Section 6, after much study, was discussed at great length in the case of *Crabtree* vs. *State,* 7 C. C. R. 207, in which case it was concluded that this section "merely defines the jurisdiction of the Court and does not create a new liability against the State nor increase or enlarge any existing liability and limits jurisdiction of the Court to claims under which the State would be liable in law or equity, if it were suable, and where claimant fails to bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure one."

In the case of *Peterson* vs. *State,* 6 C. C. R. 77, this Court said:

"It is plain from the language of this statute (The Court of Claims Act) that no claim against the State can be allowed by this Court unless there is either a legal or equitable obligation of the State to pay it. Before a claimant can have an award against the State, he must show that he comes within the provisions of some law making the

State liable to him for the amount claimed. If he cannot point out any law giving him the right to an award, he cannot invoke the principle of equity to secure the award. Where there is no legal liability, equity cannot create one. (10 R. C. L. Sec. 132.) Equity is not the court's sense of moral right; it is not the power of the court to decide a case according to the high standard of abstract right, regardless of the law. * * * To give this statute the construction contended for by claimant would result in giving this court the power to hold the State liable for the misfeasance and malfeasance of all its officers, the torts of all its servants and agents, and all damages caused by the wrongful exercise of their powers by such officers and agents. We do not believe the Legislature intended any such radical and far-reaching change in the law when it enacted the statute creating this Court."

In the case of *Perry* vs. *State*, 6 C. C. R. 81, this Court said:

"Claimant urges, however, that he should be awarded compensation as an act of justice and equity regardless of the principles of law involved. The jurisdiction of this Court is fixed by law and it has no powers except those given by the Act creating it. Section Six (6) of that Act provides: "The Court of Claims shall have power to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a sovereign commonwealth, should in equity and good conscience discharge and pay." It is obvious from the language of this statute that no claim against the State can be allowed by this Court unless there is either a legal or equitable obligation of the State to pay it. If there is either a legal or equitable obligation resting upon the State to pay a claim, then justice requires that the State should pay it. * * * "Claimant's idea seems to be that equity is used in this statute as nothing more or less than the power of the court to decide each case according to a high standard of morality and abstract right, regardless of the law, such a construction would leave this Court with practically no limitation upon its power to render judgments against the State. * * * When the Legislature created this Court and clothed it with power to hear claims against the State we do not think it thereby intended to waive the right of the State to interpose any legal or equitable defense it might have to the demands of claimants. * * *

This interpretation of paragraph 4 of Section 6 of the Court of Claims Act we think to be sound, and since the *Perry* case, and the *Crabtree* case, supra, it has been persistently and strictly adhered to by this Court. Much as we might like to interpret this section so as to enable us to grant an award in cases such as the case under con-

sideration, we do not feel that we can go beyond the plain interpretation of the law as it is written, and that it is not our function to attempt to, in effect, legislate by interpretation. Assuming the facts set forth in this complaint to be true, there is no question but that claimant has suffered a material damage, and we regret that we have no authority, under the law, to compensate him for such damages.

The Legislature of this State has long been aware of this limitation and, in an attempt to broaden the authority and jurisdiction to the Court of Claims to consider cases of this kind, the 58th General Assembly passed an Act to amend Section 6 of the Court of Claims Act, which amendment was vetoed by the then Governor, the Honorable Henry Horner, who said in part:

* * * "As phrased, the amended portion of the section seems to make the State liable for all instances where a private person or private corporation would be liable, to exempt the State from liability under the doctrine of respondeat superior and to make the State liable for the wilful and wanton act or negligence of an employee of the State. Inasmuch as the doctrine of respondeat superior holds a master responsible for negligent acts of an employee committed while he is acting within the general scope of his employment, it could be seen readily that the provisions are directly contradictory and impossible of interpretation. * * * (Veto Messages of Governor Horner on Senate and House Bills passed by the 58th and 59th General Assemblies of Illinois, page 104.)

Again, the 59th General Assembly, amended paragraph 4 of the Court of Claims Act, to read:

"To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a sovereign commonwealth, should discharge and pay; to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, in respect to which the claimant would be entitled to redress against the State if the State were suable. Where any person has suffered damage as a result of the performance by the State of any of its governmental functions, the doctrine of respondeat superior shall not apply; provided, however, that the court shall have the power to hear claims in cases now

pending or hereafter brought in said court to recover damages from the state for the death or injury of any person, or for the injury to or destruction of property, caused by the wilful and wanton act or conduct, or the negligence of an employee of the State while acting in the course of his employment, where there is no contributory negligence upon the part of such injured claimant. * * *"

This Act was vetoed by the then Governor, the Honorable Henry Horner, and for one of the reasons for this veto, he said:

"It will be noticed that the first purpose of the bill is to exclude the words 'in equity and good conscience' from the present law; that under the next provision the State is made liable in all instances where it would be liable if suable; that under the next provision the doctrine of respondeat superior is said not to be applicable to the State; and that under the next provision the State is made liable for the 'wilful and wanton act, or conduct, or the negligence of an employee of the State' if there is no contributory negligence on the part of the claimant.

"The effect of the amendment seems to be, first, to make the State liable in all instances where a private person or private corporation would be liable; second, to exempt the State from liability under the doctrine of respondeat superior; third, to make the State liable (a) for the wilful and wanton act of a State employee and (b) for the negligence of a State employee. This latter provision would again seem to make the State liable in all instances where a private person or a private corporation would be liable. Had there been no reference to the doctrine of respondeat superior and the State had been made liable in all instances where a private person or private corporation would have been liable, the bill might have been constitutional in that respect. With an exemption of the State from the doctrine of respondeat superior and then a provision, the effect of which is to withdraw such exemption, the bill is left in such a state of uncertainty and confusion as to render it impossible of enforcement." (Veto Message, page 105.)

The 60th General Assembly of Illinois, in a desire to broaden jurisdiction of the Court of Claims, passed an Act to amend Section 6 of the Court of Claims Act, to read as amended:

"To authorize the Court to hear, determine and allow claims against the State for damages on account of death or permanent injury of persons other than employees of the State, when the death or permanent injury is caused by wilful and wanton negligence of an employee of the State while acting in the course of his employment, and when the person killed or permanently injured is guilty of no contributory negligence."

163

This Act was disapproved by Governor Horner, who in his Veto Message (Veto Messages, page 56) said:

"* * * The rule is well established that a State is not liable for the negligence of its employees, as the doctrine of respondeat superior does not prevail in such cases. The enactment of this bill into law will certainly be attended with disastrous consequences. No one can estimate the increased financial burden that would be placed upon the State. It is quite probable that the total number of claims filed annually in the Court of Claims against the State would be at least doubled. There is no limitation whatever upon the amount of recovery in case of either death or permanent injury. Not only the general public but also all of the inmates of our penal and charitable institutions would be included in its scope and authorized to file claims and secure awards in case of permanent injury or death caused by the wilful and wanton negligence of an employee of the State. * * *"

"The Court of Claims will, under its usual procedure, be greatly handicapped in passing upon this type of cases." * * * "If this bill were to become law, it would only be the first step in extending the responsibility of the State for acts of its employees. Next, it would be made liable in cases of simple negligence. Later, it is conceivable that the fact that a State employee was involved in the accident, might be made prima facie evidence of negligence on his part. The State—and particularly the Division of Highways, has been carrying on an extensive and intensive campaign to cause its employee to obey traffic rules and regulations and to exercise caution at all times for their own safety and for that of the public generally. This campaign has produced gratifying results with a greatly reduced number of accidents in which State employees were involved. This bill would tend to remove the feeling of personal responsibility and thereby undo the recent successful work along these lines. In all cases the claimant would charge wilful and wanton negligence and if recovery were secured the employee would escape at least the civil consequences of his act."

In the case of *Lillian Pelli, Administratrix, etc.* vs. *State,* 8 C. C. R. 324, the Court denied an award claimed under the "equity and good conscience" theory and, in doing so, said: "in denying this claim we do so without and prejudice against any other right or procedure which claimant deems advantageous to follow." Subsequently, the 59th General Assembly passed "An Act Making an Appropriation to the Estate of Adolph Pelli." This Act made an appropriation of $6,000.00 to Lillian Pelli, as

damages for the death of her husband Adolph Pelli, while a patient in the Elgin State Hospital. The appropriation was disapproved by the Governor, the Honorable Henry Horner, who, (Veto Message, page 110) said:

"The Court of Claims has heard the evidence in this case and has denied the claim in an opinion, the soundness of which cannot be questioned. The court deals with the claim on legal grounds. It calls attention to the long established policy of this State in such matters and adds that 'the State cannot be properly asked to respond in damages for injuries sustained by any inmate of such institutions, whether due to the acts of other inmates or of attendants and employees therein.' The court refers to its own records and to the decisions of other courts to sustain itself in denial of this claim.

"It discusses the theory of 'equity and good conscience' and says that 'the facts in this case would appeal to the good conscience of any court but public policy has long established and the court is committed to the rule that the State can not be held to respond in damages *arising out of the negligent acts of its employees* or for injuries suffered by patients in its various penal and charitable institutions.' The facts in this case do appeal to our sympathy but as the Governor of this State I realize what great danger lies in the establishment of a precedent that will open the State treasury to claims for damages for the 'negligent acts of the State's employees for injuries suffered by inmates of its penal and charitable institutions.' To depart now from the long established policy of the State by approving this claim I should be setting a precedent the consequences of which might be disastrous to our State.

"Attorney General Kerner advises me that 'it seems clear in this case that there is no legal obligation upon the State.'

"I would set a bad precedent if I should approve this bill. Hence, I return it with my disapproval."

In the case of *Russell Johnson, Assignee, etc.* vs. *State,* 12 C. C. R. 157, we concluded that

"The Legislature has so far determined that the greatest good to the greatest number of citizens of this State is best served by limiting the jurisdiction of this Court to claims stated upon a legal or equitable cause of action against the State. If the Legislature has erred in this respect, arguments of equity and good conscience should be directed to it, rather than to this Court."

While we are reluctant to dismiss a claim of this kind, yet, in view of the law as it now stands and our consistent interpretation of the law, we have no authority

whatsoever to grant an award, and have no alternative but to grant the motion of the Attorney General to dismiss the complaint.

The motion to dismiss is allowed and the claim dismissed.