Joseph **ANTONELLO**, Jr., Plaintiff-Appellant,

v.

Paul **WUNSCH** et al., Defendants-Appellees.

No. 73–1835.

United States Court of Appeals, Tenth Circuit.

July 17, 1974.

Lawrence H. Pelofsky, Kansas City, Mo. (Joseph N. Miniace, Joel Pelofsky, and A. J. Gorelick, Kansas City, Mo., on the brief), for plaintiff-appellant.

Wesley A. Weathers, Topeka, Kan. (Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan., Larry L. McMullen, and Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case concerns the constitutional validity of efforts of the Kansas Supreme Court to prospectively abrogate governmental immunity for negligence as that doctrine applies to proprietary activities by the state or its agencies. Before considering the facts of the instant case, reference will first be made to Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21 (1969), which abolished governmental immunity in Kansas where the state or its agencies engage in proprietary endeavors.

In *Carroll,* the plaintiff brought an action against the Board of Regents of the State of Kansas who were charged with the operation of the University of Kansas Medical Center. The action sounded in negligence and was for injuries sustained by the plaintiff while he was a patient in the Medical Center. The state trial court dismissed the action on the ground that under the doctrine of governmental immunity the plaintiff had failed to state a claim on which relief could be granted. On appeal a majority of the Kansas Supreme Court on July 17, 1969, abolished the doctrine of governmental immunity in the proprietary field. In so doing the Kansas Supreme Court reversed the judgment of dismissal entered by the state trial court and decreed that the new rule abolishing governmental immunity in proprietary enterprises should apply to the case there at hand and to all torts thus committed by the state on or after August 30, 1969, but should not apply to torts occurring prior to August 30, 1969. In this connection the Kansas Supreme Court made the following pertinent comment:

"There remains the consideration of the time when the abrogation of the immunity as herein stated shall take effect. We are of the opinion that reasonable time should be given the various public bodies to meet the new liabilities implicit in this decision. We find ample authority for the proposition that in departing from the rule of *stare decisis,* the court may restrict application of a newly established rule to the instant case, and cases arising in the future, where it is clear that the retrospective application of the new rule will result in a hardship to those who have relied upon prior decisions of the court. (See Molitor v. Kaneland Com. Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469; Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618, and cases cited therein.)"

The Kansas Supreme Court in *Carroll* then went on to explain its decision to employ the technique of prospective overruling by quoting with approval from Molitor v. Kaneland Com. Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89 (1959), as follows:

"* * * At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere.

dictum. Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it.

"It is within our inherent power as the highest court of this State to give a decision prospective or retrospective application without offending constitutional principles. Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. (18 Ill.2d p. 28, 163 N.E. 2d p. 97.)"

In the case before us, which is remarkably similar to *Carroll*, Joseph Antonello, Jr., brought an action in the United States District Court for the District of Kansas against the Board of Regents of the State of Kansas. Jurisdiction was based on diversity of citizenship and the action was for personal injuries allegedly sustained as the result of negligent medical care when Antonello was a patient in the University of Kansas Medical Center. In the complaint Antonello alleges that his injuries were sustained during the period from August 18, 1969, through September 7, 1969.

The Board of Regents in the instant case filed a motion for summary judgment based on the doctrine of governmental immunity. For the purpose of the hearing on the motion for summary judgment, Antonello stipulated that the "acts giving rise to his cause of action first caused substantial injury prior to August 30, 1969 [and] that the fact of injury giving cause of action became reasonably ascertainable to the plaintiff prior to August 30, 1969." In other words, upon comparing the stipulation with the allegations of the complaint, we must assume that Antonello's cause of action arose after July 17, 1969, the date when the Kansas Supreme Court abolished the doctrine of governmental im-

munity in proprietary enterprises in Carroll v. Kittle, *supra*, but before August 30, 1969, the effective date for the abrogation of the doctrine as determined by that court.

Pursuant to 28 U.S.C. § 144, Antonello filed a motion to disqualify the federal district court judge to whom his case had been assigned on the grounds that the judge had previously been a member of the Kansas Supreme Court at the time of that court's decision in Carroll v. Kittle, *supra*, and that by voting with the majority the judge had participated in the formula which was under attack in the instant proceeding. The federal district judge denied the motion to disqualify, and then granted the Board of Regents' motion for summary judgment on the ground that under Carroll v. Kittle, *supra*, the Board of Regents was immune from suit for a tort committed at the University of Kansas Medical Center *prior* to August 30, 1969. Antonello now appeals.

 We find no error in the trial judge's refusal to disqualify himself. When an affidavit is filed which states *facts* showing personal bias and prejudice on the part of the judge, it becomes the latter's duty to retire from the case. 28 U.S.C. § 144. Conversely, if the affidavit is insufficient and does not meet the requirements of the statute, it is the judge's duty *not* to disqualify himself. And the fact that a judge has previously expressed himself on a particular point of law is not sufficient to show personal bias or prejudice. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); United States v. Anderson, 433 F.2d 856 (8th Cir. 1970); and Knoll v. Socony Mobil Oil Co., 369 F.2d 425 (10th Cir. 1966), cert. denied, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967). The only *fact* relied on for disqualification in the instant case is that the trial judge had been a member of the Kansas Supreme Court at the time the decision in Carroll v. Kittle, *supra*, was handed down, and had voted with the majority. Under the authorities above cited such affidavit was legally in-

sufficient and the trial judge did not err in denying the motion to disqualify.

As indicated in the quotation from *Carroll* set forth above, the reason for delaying the abrogation of proprietary governmental immunity until August 30, 1969, some forty-three days after the announcement of the *Carroll* decision, was the belief of the Kansas Supreme Court that "reasonable time should be given the various public bodies to meet the new liabilities implicit in this decision." Such form of prospective application, *i. e.*, not from the date of a decision which abolished governmental immunity, but from a future date certain, has been followed by other state courts. *See* Evans v. Board of County Commissioners, 174 Colo. 97, 482 P.2d 968 (1971); Smith v. Idaho, 93 Idaho 795, 473 P.2d 937 (1970); Spanel v. Mounds View School Dist. # 621, 264 Minn. 279, 118 N.W.2d 795 (1962); and Holytz v. Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962). *Cf.* Widell v. Holy Trinity Catholic School, 19 Wis.2d 648, 121 N. W.2d 249 (1963) (charitable immunity).

Needless to say, in the instant case Antonello makes no complaint about the fact that the Kansas Supreme Court abrogated the doctrine of governmental immunity as it applied to the University of Kansas Medical Center. What Antonello does complain about is that the Kansas Supreme Court delayed the effective date of its abrogation, except as to the plaintiff there before it, to torts occurring on and after August 30, 1969. This limitation would effectively preclude Antonello's action against the State Board of Regents, who are responsible for the University of Kansas Medical Center, since his claimed injury arose *prior* to August 30, 1969. Accordingly, Antonello takes aim on that portion of Carroll v. Kittle, *supra,* which delays the effective date of the abrogation till August 30, 1969. He claims that this fixing of an *in futuro* effective date creates an unreasonable classification in violation of the equal protection clauses of both the United States and Kansas constitutions. Furthermore, Antonello contends that by so doing the Kansas Supreme Court encroached on the powers of the legislature, thereby violating the separation of powers doctrine. In our view none of these various constitutional arguments has merit.

Any discussion of the prospective abrogation of the doctrine of proprietary governmental immunity must start with a consideration of Justice Cardozo's widely discussed opinion in Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).[1] In *Sunburst* a shipper, after complying with certain conditions precedent, brought an action in the Montana state courts to recover from the carrier for overcharges on an intrastate shipment. The shipper prevailed in the trial court. On appeal the Montana Supreme Court overruled one of its own prior decisions which had permitted recovery by the shipper of excessive or unreasonable freight charges, even though such rates had been previously approved by the state regulatory board, but limited the effect of such overruling to cases arising in the future. Thereby the shipper who had brought the action was allowed to recover. Sunburst Oil & Refining Co. v. Great Northern Ry. Co., 91 Mont. 216, 7 P.2d 927 (1932).

The carrier then complained that its rights under the United States Constitution were impaired by the refusal of the Montana Supreme Court to give its decision retroactive application, as opposed to only prospective application. In rejecting this argument, Justice Cardozo, speaking for a unanimous court, wrote as follows:

"* * * This is not a case where a court, in overrruling an earlier decision has given to the new ruling a retroactive bearing, and thereby has

---

1. *See generally* an excellent law review article on Sunburst, "The Control of 'Sunbursts': Techniques of Prospective Overruling" by

Hon. Walter V. Schaefer, then Chief Justice of the Illinois Supreme Court, in 42 N.Y.U. Law Review 631 (1967).

made invalid what was valid in the doing. Even that may often be done, though litigants not infrequently have argued to the contrary [citations omitted]. This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law nonetheless for intermediate transactions. Indeed there are cases intimating, too broadly [citation omitted] that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. * * *"

We recognize that there are differences between *Sunburst* and the instant case. However, in our view the reasoning of *Sunburst* is clearly at odds with the various constitutional arguments advanced in this case by Antonello. *Sunburst* indicates that a state court in overruling one of its prior decisions may make its ruling operate only prospectively, if it feels the equities of the situation call for such action, and, if it does so, no federal rights are thereby impaired.

In *Sunburst* the prospective application ran from the date of the Montana Supreme Court's decision overruling one of its own judicial precedents. In the instant case the Kansas Supreme Court set the effective date of its abrogation of proprietary governmental immunity to a future date certain, which was some forty-three days subsequent to its decision in Carroll v. Kittle, *supra.* We do not regard this difference to be of any great significance. The Kansas Supreme Court may, of course, it it chooses, overrule one of its prior decisions. It would seem to follow that in so doing

it may impose reasonable limitations, which would include timing, on the effective date of its overruling pronouncement. The greater would include the lesser.

■■ In sum, then, we do not regard Carroll v. Kittle, *supra,* as being in conflict with either the state or federal constitutions. The line had to be drawn somewhere, and the Kansas Supreme Court in drawing the line as it did violated none of Antonello's rights under the equal protection clauses of the United States or Kansas constitutions. The state legislature not having acted on the matter, the Kansas Supreme Court had the right to itself overrule one of its prior decisions and to apply the new rule prospectively, without violating the separation of powers doctrine. We note, parenthetically, that such action did trigger the state legislature, which, at its next session, reestablished the doctrine of proprietary governmental immunity by statute. 3A K.S.A. 46–901 et seq. (1973).

Judgment affirmed.